Estate of Bruno P. John, Deceased, Kenneth K. Condon and Lester M. John, Executors v. Commissioner. Helen John v. Commissioner.
Estate of John v. Commissioner
Docket Nos. 49846, 49847.
United States Tax Court
T.C. Memo 1955-151; 1955 Tax Ct. Memo LEXIS 188; 14 T.C.M. (CCH) 554; T.C.M. (RIA) 55151; June 14, 1955
*188 Nicholas Jaureguy, Esq., Equitable Building, Portland, Ore., and Denton G. Burdick, Jr., Esq., for the petitioners. Francis J. Butler, Esq., and John D. Picco, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income tax against Bruno P. John and Helen John as follows: Taxpayer
Year
Deficiency
Bruno P. John
1947
$241,693.01
Helen John
1947
234,047.55 Bruno P. John died after the petition was filed and his executors have been substituted as petitioners herein. The issue for determination is whether in 1947 Bruno P. John and Helen John purchased at less than fair market value from a corporation controlled by them shares of stock of another corporation, thus constituting a dividend to them to the extent of the difference between the purchase price and the fair market value of such shares. The cases have been consolidated for hearing. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. Petitioner Helen John is an individual residing in Portland, Oregon. She filed her income tax return for the taxable year ended December 31, 1947, with *189 the collector of internal revenue for the district of Oregon at Portland, Oregon. Bruno P. John (hereinafter called "B. P. John"), the husband of Helen John, was an individual residing in Portland, Oregon, during the year 1947. He filed his income tax return for the taxable year ended December 31, 1947, with the collector of internal revenue for the district of Oregon at Portland, Oregon. He died in October of 1953. On October 30, 1953, his will was admitted to probate and Kenneth K. Condon and Lester M. John were appointed and qualified as executors of his last will and estate. The term "petitioners" will be used herein to referee to B. P. John and Helen John. B. P. John was born in Germany, but came to the United States during his childhood. He lived first in Michigan and later in the State of Washington, where he found employment in the furniture business. In 1928 he went into business for himself in Portland, Oregon, through a corporation which he controlled, the B. P. John Furniture Corporation (hereinafter sometimes referred to as the "Furniture Corporation"). During 1946 and 1947 the Furniture Corporation, organized under the laws of Oregon, had outstanding 5,000 shares *190 of capital stock, of which Helen John owned 2,373 shares, and B. P. John 2,377 shares. The remaining shares were owned by their two children, Lester M. John and Imelda J. Condon (wife of Kenneth K. Condon). At all times during these years the Furniture Corporation had earnings or profits in excess of $600,000. B. P. John had considerable ability in the activities of the furniture business relating to production. He was shrewd in business matters, but had little formal education, and relied on subordinates for office routine and management. He amassed a considerable fortune over the years. Helen John did not actively participate in her husband's business. They both had considerable investments and B. P. John ordinarily assumed complete control over the financial affairs of his wife with her knowledge and consent. T. C. McIntire was credit manager of the furniture business. During 1946 and until his death on December 29, 1952, he was treasurer, vice-president and office manager of the Furniture Corporation. He was also a director and secretary-treasurer of Capital Investment Co. (hereinafter called "Capital"), another corporation controlled by petitioners during 1946 and 1947. *191 He took care of the books of the Furniture Corporation, including the general ledger and a so-called "private journal". He prepared the corporation's financial statements and tax returns, consulting with the accounting firm of Peat, Marwick, Mitchell & Company. McIntire was an accountant, but was not certified. McIntire was honest and normally competent. Within his own area of jurisdiction he was quite autocratic and appears to have taken great pride in "running things". It was not his custom to discuss matters with others. Although the offices of B. P. John and McIntire were in the same building, they were separate. B. P. John seldom visited the office where the books and records were kept. The instances in which B. P. John would take it upon himself to dictate changes relating to matters outside of the production end of the business were rare. Prior to and on August 31, 1946, Jones Lumber Co. and John Halsey Jones Company were corporations organized and existing pursuant to the laws of the State of Oregon. On August 31, 1946, B. P. John individually entered into a contract with all of the stockholders of John Halsey Jones Company. B. P. John agreed to buy and the stockholders *192 agreed to sell all of the capital stock of John Halsey Jones Company. In addition, the sellers agreed to cause Jones Lumber Co. to sell, and B. P. John agreed to buy, certain personal property of Jones Lumber Co. and all logs and lumber of Jones Lumber Co. on hand and unsold on August 31, 1946. Payment for the stock of John Halsey Jones Company and assets of Jones Lumber Co. was made by checks drawn by B. P. John upon a bank account standing in the names of B. P. John and Helen John, but which actually was his own personal account, as follows: Check No.
Date
Amount
124
8/31/46
$ 12,500.00
125
8/31/46
37,500.00
126
9/ 3/46
56,547.34
127
9/ 3/46
169,642.01
128
9/ 3/46
9,217.85
129
9/ 3/46
75,079.55
143
10/11/46
2,500.00
144
10/11/46
7,500.00
$370,486.75
The checks numbered 128 and 129 totaling $84,297.40 were in payment for the property of Jones Lumber Co. The balance represented payment for the capital stock of John Halsey Jones Company. On September 3, 1946, all stock certificates of John Halsey Jones Company were delivered to B. P. John endorsed in blank, and the property of Jones Lumber Co. covered by the agreement was transferred *193 by bill of sale to Nicholas Jaureguy as trustee for B. P. John. On the same day articles of incorporation were filed pursuant to Oregon law for the formation of Jones Lumber Corporation with authorized capital stock of 2,500 shares of common with a par value of $100 per share. The corporation was fully organized on September 4, 1946, on which day all of its stock was subscribed for and issued as follows: Certificate
Name of
no.
subscriber
No. of shares
1
B. P. John
1,251
2
Helen John
1,149
3
L. M. John
25
4
I. J. Condon
25
5
K. K. Condon
50
Total
2,500 At a stockholders' meeting held on that day the minutes list the above-named subscribers as the stockholders. B. P. John, L. M. John and K. K. Condon were elected directors. At a directors' meeting on the same day, B. P. John was elected president, L. M. John vice-president and K. K. Condon secretary and treasurer. The subscription price of the shares of stock was paid as follows: Check No.
Date
On September 4, 1946, Nicholas Jaureguy transferred to Jones
Lumber Corporation all the logs, equipment and lumber inven-
tories, and the same, together with prepaid insurance, were
applied in payment of a portion of the subscription price of
all of said shares, in the total sum of
$ 84,297.40
Cash (proceeds from B. P. John Furniture Corporation check)
500.00
Checks drawn by B. P. John upon his personal bank account
as follows: 130
9/4/46
50,000.00
142
10/9/46
50,000.00
160
11/6/46
25,202.60
$250,000.00
*194 The Furniture Corporation advanced a total of $426,189.35 in 1946 to B. P. John as follows: Date
Check No.
Amount
Payee
9/ 3/46
9985
$ 500.00
Currency
9/ 4/46
10003
310,486.75
B. P. John
9/10/46
10085
115,202.60
B. P. John
The latter two checks were deposited in the personal bank account of B. P. John on the respective dates above set forth. The proceeds therefrom together with $110,000 of B. P. John's own funds were used to purchase the John Halsey Jones Company stock and the Jones Lumber Co. assets, and to pay the balance of the subscription price for the stock of Jones Lumber Corporation. On September 4, 1946, immediately after issuance to the subscribers all of the stock certificates of the Lumber Corporation were endorsed in blank, by the subscribers and turned over to McIntire, who received them for the Furniture Corporation. The stock book of the Lumber Corporation never at any time recorded any transfer of stock to the Furniture Corporation, nor listed the Furniture Corporation as a stockholder. Ordinarily a considerable portion of the sales of the Furniture Corporation had been on credit. During the war and for some time thereafter, *195 up to and including September 4, 1946, the customers of the Furniture Corporation were in an exceptionally good financial position. As a result, an abnormally high proportion of its sales were for cash rather than on credit. Thus, in September of 1946 receivables were low and the amount of cash held by the Furniture Corporation was unusually high. B. P. John was quite solvent but lacked sufficient cash to complete the purchases of the John Halsey Jones Company stock and the Jones Lumber Co. assets and to pay the subscription price of the Lumber Corporation stock. It was decided that the large amount of cash in the hands of the Furniture Corporation be used to finance the above transactions. Kenneth K. Condon has been secretarytreasurer of the Lumber Corporation since 1946. He is the son-in-law of the petitioners. As an inducement to leave his former employment he was offered an increase in salary and an opportunity to acquire stock in the newly formed Lumber Corporation. When he received stock certificate No. 5 in the corporation he endorsed it and returned it to McIntire, as the other stockholders had done with respect to their certificates. Thereafter, when he desired his stock, *196 he attempted to enter into an arrangement with McIntire for time payments. McIntire insisted upon a promissory note with six per cent interest. Condon instead borrowed elsewhere at a lower rate of interest and paid $5,000 by check dated December 16, 1946, payable to the Furniture Corporation at which time he received his certificate. Imelda J. Condon resided with her parents until her marriage to Condon in 1940. Since 1936 she has kept the personal books of her parents, aided by advice from Peat, Marwick, Mitchell & Co. Payment for her stock certificate in the Lumber Corporation was made by her father, and the certificate therefor was ultimately presented to her as a Christmas gift in 1947. B. P. John similarly paid for the certificate of Lester M. John and presented it to him as a Christmas gift in 1947. Edward W. Weiss (hereinafter called "Weiss") has been general manager of the Lumber. Corporation since September 4, 1946. It was desired that he become a member of the board of directors. In order to comply with Oregon law requiring that every director be a shareholder Condon obtained from McIntire certificate No. 3, which had originally been issued to L. M. John. On October 16, 1946, certificate *197 No. 3 was surrendered and pasted in the stock book of the Lumber Corporation. Certificate No. 6, for 24 shares, was issued to L. M. John and certificate No. 7, for 1 share, was issued to Weiss. No consideration passed for the foregoing transfer. A directors' meeting was then held, the resignation of L. M. John accepted, and Weiss elected to fill the resulting vacancy. A meeting of the stockholders of the Lumber Corporation was held on January 14, 1947. The individuals in whose names the stock had been originally issued were present as stockholders at that meeting, with the exception of Helen John, whose absence was noted in the minutes. B. P. John, Weiss and K. K. Condon were elected as directors for the ensuing year. The directors so elected then had a meeting on the same day and elected officers. B. P. John was elected president, Weiss vice-president and K. K. Condon, treasurer. A meeting of the directors of the Lumber Corporation was held on June 20, 1947. The directors present were B. P. John, Weiss and K. K. Condon. McIntire was also present. At this meeting a resolution was adopted for the purchase by the Lumber Corporation from B. P. John and Helen John of the machinery *198 and equipment received by them on liquidation of John Halsey Jones Company for $98,000. On December 24, 1947, all the remaining outstanding certificates of stock, which had remained up to then in the possession of McIntire, were delivered to B. P. John, who thereupon signed and delivered to McIntire the following receipt: "December 24, 1947 Portland, Oregon
"Received of B. P. John Furniture Corporation the following described Certificates of Stock of Jones Lumber Corporation: Certificate #1
1,251 shares issued to B. P.
John, endorsed by him.
Certificate #2
1,149 shares issued to Helen
John, endorsed by her.
Certificate #4
25 shares issued to I. J. Con-
don and endorsed by her.
Certificate #6
24 shares issued to L. M.
John and endorsed by
him.
Certificate #7
1 share issued to Edward
W. Weiss and endorsed by
him.
Total shares
2,450 B. P. John"
The book value of all the stock of the Lumber Corporation was as follows: Date
Amount
3/31/47
$438,935.12
6/30/47
568,277.03
9/30/47
678,069.97
12/31/47 [1]
823,962.07
*199 The increase in book value as reflected above was due entirely to earnings of the Lumber Corporation. In each instance the book value as stated was the fair market value of the stock. On or about December 25, 1947, B. P. John delivered to I. J. Condon and L. M. John as aforesaid their respective certificates, Nos. 4 and 6. He placed certificates Nos. 1, 2 and 7 in a safe deposit box maintained by himself and Helen John. John Halsey Jones Company had been dissolved on October 31, 1946, and its assets were distributed to petitioners. These assets and their fair market values at the time of distribution were as follows: Land
$ 25,000.00
Buildings
92,500.00
Machinery and personal prop-
erty
110,000.00
Prepaid insurance
3,854.46 The bank account of John Halsey Jones Company was also distributed to petitioners. This account had had a balance of $62,334.89 on August 31, 1946, which was substantially unchanged at the date of dissolution. Distribution was subject to any obligations, including an estimated liability for state and Federal income taxes of $7,500. Stockholders of record at the time of dissolution were as follows: Name
No. of Shares
B. P. John
51
Helen John
46
L. M. John
1
L. J. Condon
1
K. K. Condon
1
*200 The realty received by petitioners as a result of the dissolution was leased to the Lumber Corporation from November 1, 1946 to December 31, 1946. The machinery and personal property were leased to the Lumber Corporation from October 31, 1946 to July 1, 1947. On December 31, 1946, petitioners sold to Capital the land and buildings acquired from John Halsey Jones Company, for a total consideration of $117,500. Capital credited this sum to an open account with the Furniture Corporation. The Furniture Corporation in turn debited its account with Capital and credited B. P. John with the above sum. Capital had no bank account. All of its cash transactions were handled through the bank account of the Furniture Corporation. On the same day B. P. John drew a check payable to the Furniture Corporation, in the amount of $62,334.89, drawn on the John Halsey Jones Company bank account. The Furniture Corporation credited this amount to B. P. John. The Furniture Corporation drew a check dated December 31, 1946, in favor of B. P. John in the amount of $7,500. He deposited this check in his personal account on January 15, 1947. On the following day he drew a check in favor of John Halsey Jones *201 Company in the same amount, which was deposited in the latter's account on January 17, 1947. This transaction constituted the return of the amount of $7,500 previously mentioned as estimated state and Federal income tax liability, subject to which the bank balance of John Halsey Jones Company had been distributed to petitioners and, in turn, transferred to the Furniture Corporation by B. P. John. On December 31, 1946, petitioners sold to the Lumber Corporation for $3,854.46 the prepaid insurance which they had received from John Halsey Jones Company. The Lumber Corporation drew a check for that amount payable to the Furniture Corporation and the latter credited the amount to B. P. John. On July 7, 1947, petitioners sold to the Lumber Corporation for $98,000 most of the remaining machinery and personal property distributed to them by John Halsey Jones Company. The Lumber Corporation drew a check for that amount on November 13, 1947, payable to petitioners. The payees endorsed the check to the Furniture Corporation, which credited B. P. John with the amount thereof. On June 10, 1947, petitioners sold to one Stiger for $12,000 a planer which they had received on the dissolution *202 of Halsey. The purchaser drew a check in that amount payable to Capital, which endorsed the check to the Furniture Corporation. The amount was then credited to B. P. John on the books of the Furniture Corporation. Thereafter, B. P. John paid to the Furniture Corporation the following amounts which were credited to him on the books of the Furniture Corporation: 1948
$95,000
1949
35,360
9/30/50
4,640
The entire amount of $426,189.35 advanced by the Furniture Corporation to B. P. John as aforesaid was thus returned to the Furniture Corporation as follows: Bank account of John Halsey Jones Company
$62,334.89
Less
7,500.00
$ 54,834.89
Land and buildings of John Halsey Jones Company
117,500.00
Prepaid insurance of John Halsey Jones Company
3,854.46
Machinery and personal property of John Halsey Jones Company
98,000.00
Proceeds from sale of planer of John Halsey Jones Company
12,000.00
Further payments: 1948
$95,000.00
1949
35,360.00
1950
4,640.00
$135,000.00
Total of payments by petitioners
421,189.35
Payment by K. K. Condon
5,000.00
Total
$426,189.35
In a notice filed by the Lumber Corporation *203 with the State Industrial Accident Commission at Salem, Oregon, on September 6, 1946, B. P. John, L. M. John and K. K. Condon were listed as the officers and directors of the Lumber Corporation, with respective percentages of ownership of 50.04 per cent,.01 per cent and.02 per cent. In an application dated September 11, 1946, and filed by the Lumber Corporation with the Public Utilities Commission, where identification of principal stockholders was required, the names of B. P. John and Helen John appear as owning 50 per cent and 49 per cent, respectively, of all stock of the Lumber Corporation. On its 1946 and 1947 Corporation Income Tax returns, in answer to a question on each return as to stock ownership, the Lumber Corporation listed B. P. John as owning 50.04 per cent of its stock, and having acquired such stock on September 3, 1946. At an annual meeting of the stockholders of the Furniture Corporation on January 13, 1947, the minutes signed by B. P. John state that as a matter of investment the stock of the Lumber Corporation was acquired for $245,000. The general ledger of the Furniture Corporation lists the Lumber Corporation stock as acquired September 4, 1946, for $245,000, *204 and sold to B. P. John on December 24, 1947, for the same amount. The balance sheet of the Furniture Corporation carried the Lumber Corporation stock as an investment acquired in 1946. On the corporation income tax return of the Furniture Corporation, for the year 1946, in answer to question 12, relating to ownership of stock of another corporation, the Lumber Corporation is listed, and 98 per cent of its stock is there stated as owned by the Furniture Corporation. In answer to question 8, relating to the retention of over 70 per cent of earnings and profits, the return states as follows: "8. Purchase of Stock in the Jones Lumber Corporation, operating on adjoining property for added facilities for Post War Work care of business. $245,000" This return was signed by B. P. John and McIntire. An amended return for 1946, signed by the same persons, did not make any changes respecting stockholding in the Lumber Corporation. The Furniture Corporation's 1947 return, also signed by B. P. John and McIntire, again listed 98 per cent of the stock of the Lumber Corporation as being owned by it. A sale of this stock is shown under the schedule for capital gains and losses. The schedule *205 shows the stock to have been acquired September 4, 1946, for $245,000, and to have been sold in 1947 for $245,000. The attached balance sheet showed the Lumber Corporation stock as an investment at the start of 1947. An amended return signed by B. P. John and McIntire made no relevant changes. On the personal books of both B. P. John and Helen John, the first entries showing ownership of stock in the Lumber Corporation are dated December 31, 1947. The shares of stock in the Lumber Corporation, endorsed in blank and turned over to McIntire on behalf of the Furniture Corporation on September 4, 1946, did not become the property of the Furniture Corporation. Such shares were held on behalf of the Furniture Corporation merely as security for advances which it had made to B. P. John to finance the purchase of the John Halsey Jones Company stock and the Jones Lumber Co. assets as well as the subscription to the stock of the newly organized Lumber Corporation. The release of such shares by the Furniture Corporation in December 1947 did not constitute a bargain purchase by either of the petitioners. Opinion RAUM, Judge: On December 24, 1947, the B. P. John Furniture Corporation turned *206 over to B. P. John 2,450 shares of stock in the Jones Lumber Corporation. Those shares had originally been issued on September 4, 1946, at the time the Lumber Corporation was organized, in the names of: Shares
B. P. John
1,251
Helen John
1,149
L. M. John [2]
25
I. J. Condon
25
The certificates had been endorsed in blank on the same day and handed to McIntire, the office manager of the Furniture Corporation. The theory of the Government's case is that the December 24, 1947, transaction constituted a sale of the Lumber Corporation stock by the Furniture Corporation to the petitioners for $245,000, that the stock was then worth some $800,000, and that the difference therefore constituted a bargain purchase by the petitioners taxable to them as dividends. Cf. (C.A. 4); V. . The petitioners, on the other hand, contend that they *207 did not purchase these shares from the Furniture Corporation, that the shares were acquired by the various individual stockholders upon the organization of the Lumber Corporation, that such shares were turned over to the Furniture Corporation as security for the advances which the Furniture Corporation had made in order to finance the organization of the Lumber Corporation as well as the purchase of stock and assets of two other corporations, respectively, and that the December 24, 1947, release of the stock of the Lumber Corporation was made merely at a time when the Furniture Company's advances, at least to the extent of the cost of the Lumber Corporation stock, had been repaid to the Furniture Corporation. Accordingly, petitioners argue that they received no bargain purchase from the Furniture Corporation, and that therefore the entire basis for the Government's position is destroyed. The question is primarily one of fact in the highly unusual circumstances of this case. The answer is by no means free from doubt, since there is substantial evidence pointing in opposite directions. However, it is our best judgment and we have so concluded that the Furniture Corporation did not *208 become the owner of the Lumber Corporation stock and that the transfer of the shares on December 24, 1947, did not constitute a bargain purchase by the petitioners. B. P. John personally agreed on August 31, 1946, to purchase the John Halsey Jones Company stock and Jones Lumber Co. assets. The stock was in fact transferred to him and his wife individually and the assets to a trustee for B. P. John. That transaction, together with the related organization of the Lumber Corporation, was financed primarily with funds advanced to B. P. John by the Furniture Corporation. Payment for the John Halsey Jones Company stock and Jones Lumber Co. assets was made to the sellers by checks drawn by B. P. John upon his own personal account. The stock certificates of the Lumber Corporation were issued only to the individual subscribers, not to the Furniture Corporation, and the only change which ever took place thereafter in the stock book of the Lumber Corporation was that occurring when the certificate of L. M. John was surrendered and new certificates issued in lieu thereof to L. M. John and Weiss. At the annual meeting of the stockholders on January 14, 1947, the individual subscribers and Weiss *209 rather than the Furniture Corporation were recognized as stockholders entitled to vote. These facts and others in evidence point strongly towards the finding which petitioners have asked us to make. On the other hand, the Government's position is not without substance. It argues, persuasively and ably, that the Furniture Corporation acquired outright ownership rather than a mere security interest in the Lumber Corporation shares on September 4, 1946. It points to no less than three separate documents signed by B. P. John which unequivocally represent the stock of the Lumber Corporation to have been owned by the Furniture Corporation, namely, the income tax returns of the Furniture Corporation for 1946 and 1947 and the minutes of the January 13, 1947, meeting of stockholders of the Furniture Corporation. Moreover, the personal books of B. P. John and Helen John make no mention of ownership of Lumber Corporation stock prior to the end of 1947. And the books of the Furniture Corporation itself, together with accountants' work papers, support the position of respondent rather than that of petitioners. After a careful analysis of all the evidence [3] and a conscientious attempt to assign *210 to each part thereof its proper probative value, we have concluded that the petitioners have carried their burden of proof. We are convinced from the preponderance of the evidence that the Furniture Corporation was not intended to, nor did it in fact, acquire title to any shares of the Lumber Corporation. The certificates were endorsed to and held by the Furniture Corporation as security for advances to B. P. John in the nature of a loan. The return to him of the certificates in 1947 constituted merely a release of that security and not a sale. Decisions will be entered under Rule 50. Footnotes
1. The stipulation as submitted reads "December 31, 1948." In view of the other dates listed, and since the relevant dates are all in 1947, this appears to have been a typographical error.↩
2. The certificate in the name of L. M. John was subsequently split into two certificates, one for 24 shares in the name of L. M. John, and the other for one share in the name of Edward W. Weiss, so as to enable Weiss to become a director.↩
3. Our conclusions take into account the various exhibits relied upon by respondent in the stipulation of facts to which petitioners objected (K, M, N, O, P, R, S, T, U, and V). However, they do not take into account petitioners' exhibits, 21, 22, and 22(a) which we do not regard as admissible.↩